# United States Court of Appeals for the Federal Circuit

2006-1434

BOSTON SCIENTIFIC SCIMED, INC.
(formerly known as Scimed Life Systems, Inc.),

Plaintiff-Appellant,

v.

MEDTRONIC VASCULAR, Inc.
(also known as Medtronic AVE, Inc.),

Defendant-Appellee,

and

ERIC C. MARTIN,

Defendant.

Gregory A. Castanias, Jones Day, of Washington, DC, argued for the plaintiff-appellant. With him on the brief were Gidon D. Stern, Thomas E. Friebel, Catharina J. Chin Eng, and Brent P. Ray, of New York, New York.

Brian E. Ferguson, McDermott Will & Emery LLP, of Washington, DC, argued for the defendant-appellee. On the brief were Paul Devinsky, John R. Fuisz, Stephen K. Shahida, and Natalia V. Blinkova. Of counsel were Joel M. Freed and Amanda E. Koenig.

Appealed from: United States District Court for the District of Columbia

Judge Richard J. Leon

# United States Court of Appeals for the Federal Circuit

2006-1434

BOSTON SCIENTIFIC SCIMED, INC. (formerly known as Scimed Life Systems, Inc.),

Plaintiff-Appellant,

v.

MEDTRONIC VASCULAR, Inc. (also known as Medtronic AVE, Inc.),

Defendant-Appellee,

and

ERIC C. MARTIN,

Defendant.

_____

DECIDED:    August 8, 2007
_____

Before MAYER, BRYSON and PROST, <u>Circuit Judges</u>.

MAYER, <u>Circuit Judge</u>.

Boston Scientific Scimed, Inc. ("Scimed")[*] appeals the district court's grant of summary judgment affirming the Board of Patent Appeals and Interferences' final decision, which denied Scimed the priority benefit of an earlier-filed European patent application for the subject matter at issue in Patent Interference Number 104,192 ("the

_____

[*]    Plaintiff-appellant Boston Scientific Scimed, Inc., was formerly known as Scimed Life Systems, Inc., and will be referred to throughout this opinion as "Scimed."

'192 interference"). <u>Scimed Life Sys., Inc. v. Medtronic Vascular, Inc.</u>, 486 F. Supp. 2d 60 (D.D.C. 2006). We affirm.

## Background

This appeal stems from an interference proceeding before the United States Patent and Trademark Office Board of Patent Appeals and Interferences. Scimed and Medtronic Vascular, Inc. ("Medtronic") are each assignees of different United States patent applications covering the same invention. Andrew Cragg and Michael Dake (collectively "Cragg") filed patent application 08/461,402 ("the '402 application") for the invention in question on June 5, 1995. Cragg then assigned all rights in the '402 application to Boston Scientific Technology, Inc., which later merged into Scimed, the plaintiff-appellant and current legal owner of the '402 application. Also on June 5, 1995, Thomas J. Fogarty, Timothy J. Ryan, and Kirsten Freislinger (collectively "Fogarty") filed patent application 08/463,836 ("the '836 application") for the same invention. Fogarty assigned their rights in the '836 application to a company that eventually became Medtronic, the defendant-appellee and current legal owner of the '836 application. Eric Martin, a third-party to the instant appeal, owns U.S. Patent No. 5,575,817 (the "Martin patent" or "'817 patent"), which resulted from an application filed on August 19, 1994.

On April 23, 1998, the board declared an interference between Scimed's '402 application, Medtronic's '836 application, and Martin's '817 patent. The purpose of the interference was to determine which party had priority of inventorship, thereby entitling it to the invention as set forth in the sole count of the interference:

> An apparatus for reinforcing a bifurcated lumen comprising:
> a first section, configured to be positioned within the lumen, comprising:

an upper limb, configured to fit within the lumen upstream of the bifurcation;

a first lower limb, configured to extend into the first leg of said bifurcation when said first section is positioned in the lumen, and

a second lower limb, shorter than said first lower limb, and configured so that when said first section is positioned in the lumen, said second lower limb does not extend into a second leg of said bifurcation, and further comprising

a second section configured to be positioned separately within the lumen and joined to said second lower limb of the first section, effectively extending said second lower limb into said second leg of said bifurcation.

Cragg v. Martin v. Fogarty, Patent Interference No. 104,192, Paper No. 187, 2001 WL 1339890 at *2-3 (B.P.A.I. July 21, 2001) ("Final Interference Decision").

The board initially gave Cragg the benefit of the filing dates of two European patent applications filed by MinTec SARL ("MinTec"), a French company. The earlier of these dates was February 9, 1994. At the time these European applications were filed, no legal relationship existed between MinTec and Cragg, nor was MinTec acting on behalf of Cragg. Fogerty was granted the benefit of the filing date of U.S. patent application 08/255,681, which was June 8, 1994. Martin was accorded benefit of the application that led to the '817 patent, which was filed on August 19, 1994. Accordingly, the PTO initially designated Cragg as the senior party in the interference.

Fogarty responded by filing a motion attacking the priority benefit granted to Cragg. The board granted the motion, declaring Fogarty the senior party in the interference. After Cragg protested this decision, the board issued a final decision denying his request to be declared the senior party. The board ruled that Cragg was not entitled to priority benefit under 35 U.S.C. § 119 because neither Cragg nor Dake had assigned their rights to MinTec until after it had filed the European applications. Final Interference Decision, 2001 WL 1339890, at *5.

Scimed, the assignee of Cragg's U.S. patent application, then brought an action in the United States District Court for the District of Columbia challenging the board's final decision in the '192 interference. The district court affirmed the board's final decision, Scimed, 486 F. Supp. 2d at 61, and Scimed filed this appeal. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

Discussion

We review a district court's grant of summary judgment de novo. Monsanto Co. v. Scruggs, 459 F.3d 1328, 1344 (Fed. Cir. 2006). We also apply a de novo standard when reviewing questions of law, including a trial court's interpretation of statutory language. Pitsker v. Office of Pers. Mgmt., 234 F.3d 1378, 1381 (Fed. Cir. 2000).

At issue here is whether 35 U.S.C. § 119(a)** permits an applicant for a United States patent to benefit from the priority of a foreign application previously filed by an entity that was not acting on behalf of the U.S. applicant at the time of filing. We hold that it does not.

A similar issue was addressed by the Court of Customs and Patent Appeals in Vogel v. Jones, 486 F.2d 1068 (CCPA 1973), which, to the extent relevant here, is binding upon us, South Corp. v. United States, 690 F.2d 1368, 1370 (Fed. Cir. 1982)

---

** 35 U.S.C. § 119(a) reads in relevant part:

An application for patent for an invention filed in this country by any person who has, or whose legal representatives or assigns have, previously regularly filed an application for a patent for the same invention in a foreign country which affords similar privileges in the case of applications filed in the United States or to citizens of the United States, or in a WTO member country, shall have the same effect as the same application would have if filed in this country on the date on which the application for patent for the same invention was first filed in such foreign country, if the application in this country is filed within twelve months from the earliest date on which such foreign application was filed . . . .

(en banc).  According to <u>Vogel</u>, "§ 119 gives rise to a right of priority that is personal to the United States applicant."  486 F.2d at 1072.  Due to the personal nature of this right, an applicant for a U.S. patent may only benefit from the priority of a foreign application if it was filed by the U.S. applicant or "on his behalf."  <u>Id.</u>

Scimed argues that <u>Vogel</u> does not require the foreign applicant to have been acting on behalf of the U.S. applicant <u>at the time the foreign application was filed</u>.  It points to the following passage in support:

> This practice [of allowing a U.S. applicant to claim priority from a foreign application filed by someone else] arose because it was recognized that in many foreign countries, unlike in the United States, the actual applicant for a patent can be other than the inventor, e.g., an assignee.  In light of this, we regard the language in § 119 referring to legal representatives and assigns to merely represent a codification of the actual practice under [the predecessor statute to § 119].  Since under United States law an application for patent must be made by the inventor, that practice was based on the requirement that the foreign application, regardless of the identity of the applicant, must have been filed for an invention actually made by the inventive entity seeking to rely upon it for priority purposes.  We think § 119 must be construed to the same end.

<u>Id.</u> (footnote omitted).  Scimed attempts to construe this language as permitting a U.S. applicant to benefit from a foreign application's earlier filing date whenever "the invention described in the foreign application [is the same] one actually made by the U.S. applicant," "'regardless of the identity of the applicant' of the foreign application."  According to its interpretation, "the <u>Vogel</u> court did <u>not</u> hold that the foreign application must have been filed by a person who was an assignee or legal representative of the U.S. inventor <u>at the time the foreign application was filed</u>, or that the foreign application must have been filed on his behalf in order for there to be priority benefit."  We disagree.

Vogel clearly held that the above-quoted passage "means that an applicant for a United States patent can rely for priority on the 'first filed' application by an assignee on his behalf." Id. (emphasis added). Moreover, "the existence of an application made by [the inventor's] assignee in a foreign country on behalf of one other than the United States inventor is irrelevant to his right of priority based on applications made on his behalf." Id. In other words, while the foreign application must obviously be for the same invention and may be filed by someone other than the inventor, section 119(a) also requires that a nexus exist between the inventor and the foreign applicant at the time the foreign application was filed. Indeed, as a matter of pure logic, an entity could not have filed a foreign application "on behalf of" an inventor without the inventor's knowledge or consent; that the foreign application may have been filed in accordance with the laws of the country in which it was filed has no bearing here. Therefore, to the extent that there may have been any uncertainty or ambiguity in Vogel, we now explicitly hold that a foreign application may only form the basis for priority under section 119(a) if that application was filed by either the U.S. applicant himself, or by someone acting on his behalf at the time the foreign application was filed.

Scimed also contends that the district court erred by precluding it from presenting evidence relating to theories of constructive trust and equitable assignment. A party may present new evidence to the trial court when appealing a board decision in an interference proceeding. Conservolite, Inc. v. Widmayer, 21 F.3d 1098, 1102 (Fed. Cir. 1994). A party may not, however, advance new legal theories at the trial court level, even if the overarching legal issue was presented below. See id. ("[A]n action under [35 U.S.C.] § 146 is essentially a proceeding to review the action of the Board. . . . [T]he

parties to an interference must make a complete presentation of the issues at the Board level so that the interference is efficient and not wasteful of administrative and judicial resources."). Failure to advance legal theories before the board constitutes a failure to "make a complete presentation of the issues," and permitting a party to raise those theories for the first time before the trial court would be both inefficient and "wasteful of administrative and judicial resources." The parties stipulated that the only issue to be resolved by the district court was whether the board correctly ruled on Fogarty's motion attacking the priority benefit initially granted to Cragg, Scimed, 486 F. Supp. 2d at 64, and Scimed did not raise either of these theories before the board, see Final Interference Decision, 2001 WL 1339890, at *3-10. The district court therefore did not err by precluding Scimed from presenting evidence to support these new legal theories.

## Conclusion

Accordingly, the judgment of the United States District Court for the District of Columbia is affirmed.

## AFFIRMED